# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TROY COULSTON, | ) | |
| | ) | Civil Action No. 12 – 154J |
| Plaintiff, | ) | |
| | ) | District Judge Kim R. Gibson |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| STEVEN GLUNT, KENNETH | ) | |
| HOLLIBAUGH, JEFFREY BEARD, | ) | ECF No. 50 |
| SEAN DOMANICK, ROBERT | ) | |
| ROSENBAUM, DAVID CLOSE, | ) | |
| DAVID KESSLING, SERGEANT | ) | |
| JOHN SAWTELLE, ROBERT REED, | ) | |
| ROBERT MACINTYRE, TRACY | ) | |
| WILLIAMS, DORINA VARNER, | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

## I. RECOMMENDATION

For the reasons stated herein, it is respectfully recommended that the Court construe Defendants' Motion to Dismiss as a Partial Motion to Dismiss and grant it on the grounds asserted therein.[1] It is recommended that Defendants Gunt, Beard, Close, Kessling, Sawtelle, MacIntyre, Williams and Varner be dismissed for lack of personal involvement. It is recommended that the John Doe Defendant be dismissed as there are no allegations directed toward him in the Second Amended Complaint. It is further recommended that Plaintiff's claim for money damages against the Defendants in their official capacities be dismissed based on Eleventh Amendment immunity. Finally, it is recommended that Plaintiff's due process claim

---

[1] Defendants do not argue any grounds for dismissal of Defendants Domanick, Rosenbaum and Hollibagh.

against Defendant Reed be dismissed for failure to state a claim and that Defendant Reed be dismissed for lack of personal involvement to the extent Plaintiff asserts additional claims against him.

Defendants do not move to dismiss any portion of Plaintiff's Second Amended Complaint against Defendants Domanick, Rosenbaum or Hollibaugh. As such, the claims asserted against them remain pending.

## II. REPORT

Troy Coulston ("Plaintiff") is an inmate in the custody of the Pennsylvania Department of Corrections and currently incarcerated at the State Correctional Institution at Houtzdale ("SCI-Houtzdale"). He initiated this *pro se* prisoner civil rights action on August 7, 2012. He alleges various violations of his federal constitutional rights, including his right to access the courts, freedom of speech, freedom from cruel and unusual punishment, due process, equal protection, freedom from obstruction of justice, and freedom from tampering with evidence. Generally, he alleges that defendants denied him these rights when they confiscated and destroyed his legal materials, which he needed to prepare petitions for post-conviction relief and a civil rights complaint.

Defendants include the following individuals: Steven Glunt (Superintendent of SCI-Houtzdale), Kenneth Hollibaugh (Corrections Officer), Jeffrey Beard (Secretary of the Pennsylvania Department of Corrections), Sean Domanick (Corrections Officer), Robert Rosenbaum (Corrections Offiicer), David Close (Deputy Superintendent), David Kessling (Deputy Superintendent), John Sawtelle (Corrections Classification and Program Manager), Robert Reed (Hearing Examiner), Robert MacIntyre (Chief Hearing Examiner, Misconduct

2

Appeals), Tracy Williams (Chief Grievance Officer), Dorina Varner (Chief Grievance Officer), and John Doe.

Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded by filing a Brief in opposition to the Motion to Dismiss, to which Defendants filed a Reply Brief. Plaintiff then filed a Brief in opposition to Defendants' Reply. The Motion is now ripe for review.

**A. Background**

The following allegations are included in Plaintiff's Second Amended Complaint.

On August 3, 2010, Defendants Domanick and Rosenbaum conducted a property inventory with Plaintiff. (ECF No. 49 at ¶ 33.) Plaintiff had four boxes of extra legal material so Domanick gave Plaintiff an order to go through his property so that he could be in compliance with policy DC-ADM 815.[2] Id. at ¶ 34. Plaintiff's misconduct report indicates that Plaintiff told Domanick "no," and to just give him confiscation slips for his extra property. (Plaintiff's Exh. N, ECF No. 49 at p.9.) However, Plaintiff alleges that he said no because he had a constitutional right to possess all four boxes of legal material so that he could file a petition for post-conviction relief and a related civil rights complaint. (ECF No. 49 at ¶ 35.) Plaintiff alleges that Domanick then stated that he was going to throw "all" of Plaintiff's legal material away, but his misconduct report indicates that Plaintiff's property was inventoried with him present, albeit in handcuffs, and that one pair of athletic shorts and the four boxes of legal material were confiscated. (Plaintiff's Exh. N, ECF No. 49-1 at p.9); (ECF No. 49 at ¶ 36.) Plaintiff was provided with an

---

[2] Relevant in this case, DC-ADM 815, § 3.B provides limits on the accumulation of property in a cell. It states that an inmate in general property may keep property in his or her cell that can be contained in four records boxes or in one footlocker and two records boxes. § 3.B.1. If requested, an inmate may be permitted to maintain extra storage boxes for legal material for active cases. § 3.B.8. Such request must be approved by the Facility Manager. Id. Any excess property over the property limits established by the DOC may be shipped out at the inmate's expense or destroyed. § 3.B.9.

inventory and confiscation items receipt. (Plaintiff's Exh. O, ECF No. 49-1 at p.9); (ECF No. 49 at ¶ 37.)

Plaintiff was given a misconduct for refusing to obey an order and possession of contraband. (Plaintiff's Exh. N, ECF No. 49-1 at p.9); (ECF No. 49 at ¶ 37.) His misconduct hearing was held on August 6, 2010, at which time Defendant Reed, the hearing examiner, found Plaintiff guilty of both charges. (Plaintiff's Exh. P, ECF No. 49-1 at p.10); (ECF No. 49 at ¶¶ 38, 40.) According to Plaintiff, Reed confiscated Plaintiff's legal material because anything over two boxes is deemed "excess" and considered contraband pursuant to DC-ADM 815. (Plaintiff's Exh. P, ECF No. 49-1 at p.10); (ECF No. 49 at ¶¶ 38, 40.) Plaintiff was advised that the disposition of his property was to occur through R&D. (Plaintiff's Exh. P, ECF No. 49-1 at p.10.)

Plaintiff appealed the finding of the Hearing Officer Reed but the Program Review Committee ("PRC"), consisting of Deputy Superintendents Defendants Kessling and Close and Classification and Program Manager Defendant Sawteele, upheld the decision on August 27, 2010. (Plaintiff's Exhs. R & S, ECF No. 49-1 at p.11.) They advised Plaintiff of the means to request permission to retain extra boxes, which were for active legal cases, and encouraged him to make such a request. (Plaintiff's Exh. R, ECF No. 49-1 at p.11.)

Plaintiff next appealed the decision of the PRC to Defendant Glunt, the Superintendent, who, on September 14, 2010, upheld the decisions of the hearing examiner and the PRC. (Plaintiff's Exh. T, ECF No. 49-1 at p.12.) His final review appeal was denied by Defendant MacIntyre, the Chief Hearing Examiner, on October 1, 2010. (Plaintiff's Exh. U, ECF No. 49-1 at p.12.)

Plaintiff filed Grievance #331614 on August 17, 2010, in order to stop prison officials from destroying his legal material. (Plaintiff's Exh. A, ECF No. 49-1 at p.1.) He claimed that he should not have to ship or destroy the four extra boxes of his legal work. Id. Defendant Hollibaugh responded to the grievance advising Plaintiff that he was in excess of the allowable amount of property. (Plaintiff's Exh. D, ECF No. 49-1 at p.3.) However, because Plaintiff was claiming that the property was legal work, he was told to supply Hollibaugh with a list of all cases by docket number so that he could verify that Plaintiff's cases were active litigation and consider whether Plaintiff should be granted approval to retain his extra property. Id. Plaintiff was given a deadline of September 1, 2010. Id.

Plaintiff appealed the grievance, which Hollibaugh had deemed "resolved." (Plaintiff's Exh. C, ECF No. 49-1 at pp.2, 3.) On September 16, 2010, Superintendent Glunt reported that Hollibaugh appropriately investigated Plaintiff's claims and advised Plaintiff to provide Hollibaugh with the requested information so that he could verify that Plaintiff had a need for the extra boxes of legal material. (Plaintiff's Exh. B, ECF No. 49-1 at p.2.) He also informed Plaintiff that his items would be held pending final review by Central Office. Id. Plaintiff's final appeal to the Secretary's Office of Inmate Grievance and Appeals ("SOIGA") was denied on October 26, 2010, by Defendant William on behalf of Defendant Varner, Chief Hearing Officer. (Plaintiff's Exhs. E, F, ECF No. 49-1 at pp.4-5.) Plaintiff was again advised to provide proof of open, active cases in order to demonstrate that he had a need for the boxes and then the Superintendent would exercise his discretion and determine if Plaintiff required an exemption. (Plaintiff's Exh. F, ECF No. 49-1 at p.5.)

Plaintiff submitted an Inmate Request to Staff Member form to Defendant Hollibaugh on January 3, 2011. (Plaintiff's Exh. I, ECF No. 49-1 at p.6.) Plaintiff stated that he provided a

status sheet reflecting active cases but Hollibaugh told Plaintiff that the Legal Research Center had reported that Plaintiff had no active litigation. Id.

**B. Standard of Review**

Defendant filed a Motion to Dismiss the Complaint for Plaintiff's failure to state a clam upon which relief can be granted. In considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." Id. at 210-11; *see also* Malleus, 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. Fowler, 578 F.3d at 212; *see also* Guirguis v. Movers Specialty Servs., Inc., 346 F. App'x. 774, 776 (3d Cir. 2009). In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. Twombly, 550 U.S. at 563 n.8.

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently

alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

**C. Discussion**

In their Motion to Dismiss, Defendants argue that the supervisory Defendants should be dismissed for lack of personal involvement, that Defendants cannot be sued for money damages in their official capacities, and that Plaintiff has failed to state a claim against Hearing Examiner Reed.

1. Personal Involvement

First, Defendants argue that Plaintiff has failed to allege personal involvement on the part of the supervisory Defendants. For liability under 42 U.S.C. § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. However, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement; allegations "must be made with appropriate particularity." Id.

As Defendants correctly note, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement necessary for liability in a Section 1983 action. *See* Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to

demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). *See also* Wilkerson v. Schafer, No. 09-2539, 2011 U.S. Dist. LEXIS 25916, 2011 WL 900994, at *7 (M.D. Pa. Mar. 14, 2011) (allegations that defendants "should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); Croom v. Wagner, No. 06-1431, 2006 U.S. Dist. LEXIS 64915, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 U.S. Dist. LEXIS 51582, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

Pursuant to the above standard, it is recommended that the following Defendants be dismissed: (1) the members of Plaintiff's PRC, which included Defendants Kessling, Close and Sawtelle; (2) Defendant Glunt, who responded to Plaintiff's misconduct and grievance appeals; (3) Defendant MacIntyre who responded to Plaintiff's misconduct appeal; and (4) Defendants Williams and Varner who responded to Plaintiff's final grievance appeal. The fact that these Defendants participated in the administrative and disciplinary review process does not establish personal involvement in any unconstitutional conduct, which, in this case is the alleged confiscation and destruction of Plaintiff's legal property.

It is also recommended that these Defendants be dismissed to the extent Plaintiff alleges that they violated his constitutional rights simply by denying or concurring in the denial of his grievance appeals. This is because inmates do not have a constitutional right to a prison grievance system. *See* Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977); Speight v. Sims, 283 F. App'x 880, 881 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001), stating that "the existence of a prison grievance procedure confers no liberty interest on a prisoner."); Hoover v. Watson, 886 F. Supp. 410, 418-19 (D. Del. 1995) (citing cases), *aff'd*, 74 F.3d 1226 (3d Cir. 1995). Plaintiff's "constitutional right to petition the government for redress of grievances is the right of access to the courts, 'which is not compromised by the prison's refusal to entertain his grievance.'" Id. (quoting Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)).

Plaintiff alleges that the above supervisory Defendants are liable because they failed to investigate, intervene and correct an "ongoing" violation of which they knew or should have known about via review of his grievances and appeals. This is incorrect. Plaintiff filed his grievance to complain about the confiscation of his legal materials. Although he stated that prison officials were going to "destroy" his legal materials, Defendant Hollibaugh responded to Plaintiff's grievance by telling Plaintiff that he needed approval to retain his extra boxes of legal material and that he would consider approving a request to retain the items after Plaintiff submitted verification of active litigation. On appeal, Defendant Glunt reaffirmed that Plaintiff could retain his additional property if Hollibaugh verified that the need existed. Defendants Williams and Tracy similarly reaffirmed this fact in Plaintiff's final appeal to SOIGA. There was no "ongoing" violation as Plaintiff alleges. Moreover, the evidence shows that these Defendants actually attempted to remedy the situation by advising Plaintiff to submit verification

of active litigation so that Hollibaugh could consider a request to retain the extra legal material. This was also the case with Plaintiff's misconduct appeals when Defendants Kessling, Close and Sawtelle "encouraged" Plaintiff to make a proper request for retention of his legal material. Nowhere in his Second Amended Complaint does Plaintiff allege that he made such a request and that his request was denied, although it does appear that Plaintiff submitted docket sheets from his criminal cases and it was determined that his litigation was not "active" so as to permit retention of the extra legal material. In sum, there was no "ongoing" violation of which Defendants failed to address.

It is further recommended that Defendant Beard be dismissed from this action also based on a lack of personal involvement. Plaintiff alleges that Defendant Beard is liable because he is responsible for the overall operation of each institution and because he created and enforced a facially unconstitutional policy that allowed for the confiscation and destruction of his legal property. A supervisory defendant like Defendant Beard can be held liable if he or she played an "affirmative part" in the complained-of misconduct. *See* Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)). In this regard, the Third Circuit Court of Appeals has stated that "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (footnote omitted). Additionally, "[i]t is possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior." Baker v. Monroe Township, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3d Cir. 1989)). A supervisor may also be liable "if he or she implements a policy or practice that

creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011) (citing Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001). However, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Chinchello, 805 F.2d at 134.

In this case, there are no factual allegations to support a claim against the supervisory Defendants predicated on supervisory liability. Moreover, Plaintiff's allegations that Defendant Beard, and the other supervisory defendants, are automatically liable for the action of their subordinates simply by virtue of their positions is a classic example of liability predicated on *respondeat superior*, which does not establish personal involvement for a Section 1983 claim.

Furthermore, Plaintiff's allegation that Defendant Beard is liable for "creating and enforcing a facially unconstitutional policy" is without merit because there is nothing facially unconstitutional about DC-ADM 815, §3.B., which provides limitations on accumulation of inmate property within a cell. To the extent Plaintiff alleges that the policy restricts access to legal materials, Plaintiff fails to acknowledge that the policy provides a method for inmates to maintain extra storage boxes of legal material. While the policy maintains a property limit, it also states that an inmate can ship the excess property instead of having it destroyed. Despite Plaintiff's allegations, the policy does not mandate destruction of excess legal material, or any legal material for that matter. Therefore, it is recommended that Defendant Beard also be dismissed.

Finally, it is recommended that Defendant John Doe be dismissed. *See* ECF No. 46 (Court's Order dated May 21, 2012, granting and denying in part Plaintiff's Motion to Amend/Correct and directing the Clerk to change the caption to identify John Doe 1 as Sean Domanick and John Doe 2 as Robert Rosenbaum.) Plaintiff provides no factual allegations as to this Defendant and there is no reference to him in Plaintiff's Second Amended Complaint apart from his identification as a defendant in the caption.

Official Capacity

Plaintiff has sued the Defendants in their individual and official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citation omitted). In this case, Plaintiff's official capacity claims are really claims against the Commonwealth of Pennsylvania.

The Eleventh Amendment provides states with immunity not only from suits brought by citizens of other states, but also from suits brought by their own citizens. Hans v. Louisiana, 134 U.S. 1, 12-14 (1890). But a state's Eleventh Amendment protection from federal suits is not absolute. Congress may authorize such a suit under its power to enforce the Fourteenth Amendment, Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999), thereby abrogating a state's sovereign immunity but only "when it both unequivocally intends to do so and 'acts pursuant to a valid grant of constitutional authority,'" Bd. of Trs. Of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) (quoting Kimel v. Bd. of Regents, 528 U.S. 62, 73 (2000). A state may also waive its sovereign immunity by consenting to suit. Coll. Sav. Bank, 527 U.S. at 670 (citing Clark v. Barnard, 108 U.S. 436 (1883));

13

Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). Additionally, a person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the "legal fiction" of Ex parte Young, 209 U.S. 123, 159-60 (1908), despite the text of the Eleventh Amendment. Alden v. Maine, 527 U.S. 706, 757 (1999).

No exceptions to the Eleventh Amendment immunity are applicable here. By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued. *See* 42 Pa. Cons. Stat. Ann. § 8521(b); *see also* Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). Additionally, Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. *See, e.g.*, Will, 491 U.S. at 66 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Quern v. Jordan, 440 U.S. 332, 341 (1979); Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378 (M.D. Pa. 1995) (holding that States' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996). For these reasons, it is recommended that Plaintiff's claim for money damages against the Defendants in their official capacities should be dismissed.

2. Hearing Examiner Reed

Plaintiff alleges that Defendant Reed, his misconduct hearing examiner, is liable in connection with his review of Plaintiff's misconduct. However, Defendant Reed is subject to dismissal for Plaintiff's failure to state a procedural due process claim against him. The Disciplinary Hearing Report indicates that Plaintiff was sanctioned to thirty days of disciplinary custody and disposition of his extra property in accordance with R&D.

Plaintiff's one month long disciplinary confinement period did not impact a constitutionally protected liberty interest for which he was entitled to due process protections. Courts within this Circuit and the State of Pennsylvania, applying the standard announced in Sandin v. Conner, 515 U.S. 472 (1995),[3] have found no protected liberty interest implicated by placement in disciplinary custody for longer amounts of time. *See* Smith v. Mensinger, 293 F.3d 641, 652 (3d Cir. 2003) (Seven months disciplinary confinement did not implicate liberty interest); Griffin v. Vaughn, 112 F. 3d 703, 708 (3d Cir. 1997) (Finding that fifteen months in administrative custody did not deprive plaintiff of a liberty interest and thus he was not entitled to procedural due process protection.); Young v. Beard, 227 F. App'x 138, 141 (3d Cir. 2007) (holding that absent allegations showing that conditions in disciplinary confinement for 930 days imposed atypical and significant hardship on an inmate in relation to ordinary incidents of prison life, the inmate was not entitled to procedural protections required by due process during prison disciplinary proceedings); Abney v. Walker, No. 2:06cv1248, 2007 U.S. Dist. LEXIS 36166, 2007 WL 1454265, at *3 (W.D. Pa. May 17, 2007) (adopting Report and Recommendation finding that 75 days in the RHU did not trigger due process protections); Brown v. Blaine, 833 A.2d 1166, 1172 (Pa. Commw. Ct. 2003) (Four months in the long term segregation unit was not

---

[3] In this regard, the Supreme Court has held that prison conditions deprive a prisoner of a state created liberty interest that is protected by due process guarantees when they result in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995). Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: (1) the amount of time the prisoner was placed into disciplinary segregation; and (2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Supreme Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

an "atypical and significant hardship."). Plaintiff's allegations do not support an entitlement to procedural due process protections with regard to his sanction of thirty days disciplinary custody.

Furthermore, Plaintiff's extra property, although deemed "contraband," was not ordered to be destroyed. Instead, it was ordered to be disposed of in accordance with R&D, and Plaintiff was advised and encouraged to make a request to the Facility Manager to maintain the extra boxes of legal material. Whether Plaintiff did so, or not, does not alter the fact that Plaintiff has failed to state a due process claim against Defendant Reed. Moreover, other than conducting Plaintiff's misconduct hearing, Defendant Reed is not alleged to have acted in any other manner. Therefore, to the extent Plaintiff has asserted additional claims against him, he is subject to dismissal for lack of personal involvement.

## III. CONCLUSION

For the aforementioned reasons, it is respectfully recommended that the Court construe Defendants' Motion to Dismiss as a Partial Motion to Dismiss and grant it on the grounds asserted therein.[4] It is recommended that Defendants Gunt, Beard, Close, Kessling, Sawtelle, MacIntyre, Williams and Varner be dismissed for lack of personal involvement. It is recommended that the John Doe Defendant be dismissed as there are no allegations directed toward him in the Second Amended Complaint. It is further recommended that Plaintiff's claim for money damages against the Defendants in their official capacities be dismissed based on Eleventh Amendment immunity. Finally, it is recommended that Plaintiff's due process claim against Defendant Reed be dismissed for failure to state a claim and that Defendant Reed be dismissed for lack of personal involvement to the extent Plaintiff asserts additional claims against him.

---

[4] Defendants do not argue any grounds for dismissal of Defendants Domanick, Rosenbaum and Hollibagh.

Defendants do not move to dismiss any portion of Plaintiff's Second Amended Complaint against Defendants Domanick, Rosenbaum or Hollibaugh. As such, the claims asserted against them remain pending.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: February 7, 2014.

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Troy Coulston
BK-3534
SCI Houtzdale
P.O. Box 1000
Houtzdale, PA 16698
*Via First Class Mail*

Counsel of Record
*Via ECF Electronic Mail*