IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TROY COULSTON, | ) | |
| --- | --- | --- |
| | ) | Civil Action No. 12 – 154J |
| Plaintiff, | ) | |
| | ) | District Judge Kim R. Gibson |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| STEVEN GLUNT, KENNETH | ) | |
| HOLLIBAUGH, JEFFREY BEARD, | ) | ECF No. 85 |
| SEAN DOMANICK, ROBERT | ) | |
| ROSENBAUM, DAVID CLOSE, | ) | |
| DAVID KESSLING, SERGEANT | ) | |
| JOHN SAWTELLE, ROBERT REED, | ) | |
| ROBERT MACINTYRE, TRACY | ) | |
| WILLIAMS, DORINA VARNER, | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

I. **RECOMMENDATION**

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants Sean Domanick, Kenneth Hollibaugh, and Robert Rosenbaum at ECF No. 85 be granted.

II. **REPORT**

A. RELEVANT FACTS

The following facts are undisputed unless otherwise indicated, and are taken from the parties' Concise Statements of Material Facts at ECF Nos. 91 and 99.[1] Plaintiff, Troy Coulston ("Plaintiff"), proceeding pro se, was at all relevant times incarcerated at the State Correctional

---

[1] Where appropriate, the Court also relies on underlying documentation, including declarations, and Plaintiff's deposition transcript.

Institution at Houtzdale ("SCI-Houtzdale"). (ECF Nos. 91 & 99 at ¶ 1.) The Defendants remaining on summary judgment are Corrections Officer Sean Domanick ("Defendant Domanick"), Corrections Officer Robert Rosenbaum ("Defendant Rosenbaum"), and Major Kenneth Hollibaugh, Major of Unit Management during the relevant time period ("Defendant Hollibaugh") (collectively "Defendants"). (ECF Nos. 91 & 99 at ¶ 2.) Plaintiff's claims arise from events occurring on August 3, 2010 when his legal materials were confiscated and eventually destroyed. Prior to this date, Plaintiff had no contact with any of the Defendants. (ECF Nos. 91 & 99 at ¶ 5.)

Plaintiff was housed in the Restricted Housing Unit ("RHU") because he had received a misconduct. (ECF Nos. 91 & 99 at ¶ 3.) On August 3, 2010, his property, including four (4) boxes of legal material, was inventoried and packed by Defendants Domanick and Rosenbaum. (ECF Nos. 91 & 99 at ¶ 6.) Defendant Domanick told Plaintiff that his property was excess property and contraband, and discussed confiscating and destroying it. Plaintiff disputes that Defendant Domanick asked him whether he wanted to ship his excess property out of the prison. (ECF Nos. 91 & 99 at ¶ 7; ECF No. 99 at ¶ 5.)

Defendants Domanick and Rosenbaum asked Plaintiff to sign an Inmate Personal property Inventory sheet. Plaintiff agreed. (ECF Nos. 91 & 99 at ¶ 8.) Plaintiff also received a Confiscated Items Receipt for four (4) boxes of legal paperwork that was signed by Defendant Domanick. (ECF Nos. 91 & 99 at ¶ 9.) Plaintiff contends that the four (4) boxes of legal material included notes of testimony, discovery material, a declaration, and a motion dealing with his homicide and aggravated assault cases. (ECF Nos. 91 & 99 at ¶ 10.)

Plaintiff indicated that he "never got a chance" to file a Post-Conviction Relief Act ("PCRA") petition. (ECF Nos. 91 & 99 at ¶ 11.) In deposition, Plaintiff testified about the

2

exception to the one-year time limitation for filing of PCRA petitions where exceptional circumstances are present. Specifically, Plaintiff contends that he discovered that the former district attorney of Philadelphia County withheld fingerprint evidence that could exonerate him, and that he received a declaration in the mail from a person named Desmond McDougald, years after his original conviction in Philadelphia County. (ECF Nos. 91 & 99 at ¶ 11.) In Plaintiff's declaration, Plaintiff states he received the McDougald declaration approximately two (2) weeks before his property was confiscated by Defendants Domanick and Rosenbaum. (ECF No. 98 at 2, ¶ 2.) When Plaintiff was asked in deposition whether he tried to replace the McDougald declaration, Plaintiff responded: "How?" and said "it was gone." (ECF Nos. 91 & 99 at ¶ 12.)

Plaintiff states that, in addition to the exculpatory fingerprint evidence, Desmond McDougald also stated in his declaration that Plaintiff's codefendant in his first degree homicide case, Mr. White, confessed to McDougald that White committed the homicide, and provided the forensic fingerprint report to McDougald, who forwarded the report to Plaintiff. Mr. White had pled guilty, and testified against Plaintiff. (ECF Nos. 91 & 99 at ¶ 14.) According to Plaintiff, the forensic fingerprint report indicated that Mr. White's fingerprint appeared on the car door in which the homicide victim was found. (ECF No. 99 at ¶ 4.)

Plaintiff also contends that he intended to file a § 1983 action against the former district attorney of Philadelphia County. Plaintiff argues that he intended to allege that the district attorney withheld exculpatory fingerprint evidence. Plaintiff states that his draft of the § 1983 lawsuit was destroyed, along with an early stage draft of his PCRA petitions. (ECF Nos. 91 & 99 at ¶ 13.)

Plaintiff also indicated that Defendant Hollibaugh told Plaintiff that he checked with his legal advisor as to whether Plaintiff had any pending litigation. When the advisor indicated that

3

Plaintiff did not, Defendant Hollibaugh ordered that the legal materials be destroyed. (ECF Nos. 91 & 99 at ¶ 13.) Plaintiff disputes that Defendant Hollibaugh consulted with his legal advisor and that Hollibaugh was advised to destroy Plaintiff's legal material. (ECF No. 99 at ¶ 11.)

Plaintiff filed a grievance against the Defendants concerning the confiscation and destruction of his legal property. His grievance was denied, and Plaintiff exhausted his appeals, which were also denied. (ECF Nos. 91 & 99 at ¶ 16.)

Under Department of Corrections' policy DC-ADM 815, an inmate in general population is allowed to keep four (4) records center boxes of property in his cell, or one footlocker and two records center boxes. If an inmate is in disciplinary custody ("DC status") in the RHU, he is only permitted one records center box in his cell at any one time. DC-ADM 815 defines contraband to include personal property in excess of the allowable limits in the prison. An inmate may receive a misconduct report for possessing excess property. All items deemed to be contraband will be destroyed or otherwise disposed of after any relevant misconducts and grievances and appeals have been resolved. (ECF Nos. 91 & 99 at ¶¶ 29, 19.)

### B. LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence, or the lack thereof, which demonstrates the absence of a genuine

issue of material fact. *Nat'l State Bank v. Fed. Reserve Bank of New York*, 979 F.2d 1579, 1581-82 (3d Cir. 1992) (citing *Celotex*, 477 U.S. at 323-25). Once that burden has been met, the nonmoving party may not rest on the allegations in the complaint, but must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e) (1963)). *See also Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.") (citing *Celotex*, 477 U.S. at 322).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. See Fed. R. Civ. P. 56(c)(2); *Celotex*, 477 U.S. at 324; *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).

In his brief in Response to Defendants' Motion for Summary Judgment, Plaintiff contends that Defendants have violated Plaintiff's First, Fifth, Sixth, Eighth and Fourteenth Amendment rights to the United States Constitution. In liberally construing Plaintiff's briefs, Declaration, and Responsive Concise Statement of Material Facts in conjunction with his pro se Complaint and Amended Complaints at ECF Nos. 4 & 49, Plaintiff's claims appear to consist of the following: 1). First Amendment claim for denial of access to the courts; and 2). Fourteenth Amendment claim for violation of procedural due process.

C. ANALYSIS

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

1. First Amendment Denial of Access to the Courts

Defendants argue that their Motion for Summary Judgment should be granted because Plaintiff did not suffer an actual injury to a non-frivolous legal action, and he had no active litigation at the time of the confiscation of his legal property. Plaintiff responds that because Defendants confiscated and destroyed his legal materials, he was unable to pursue his PCRA and habeas corpus petitions in light of the newly discovered exculpatory evidence provided in the declaration of Desmond McDougald. Likewise, Plaintiff contends that he was unable to pursue a 42 U.S.C. § 1983 civil rights action against the former district attorney of Philadelphia County who allegedly withheld the exculpatory forensic fingerprint evidence.

Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. *Id*. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing or meaning legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."). Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in *Lewis v. Casey*, 518 U.S. 343 (1996). In *Lewis*, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the court observed:

> Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense . . . . Insofar as the right vindicated by *Bounds* is concerned, "meaningful access to the courts is the touchstone," *id*., at 823, 97 S. Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. Although *Bounds* itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which *Bounds* relied, *see id*., at 821-825, 97 S. Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. *Id*., at 832, 97 S. Ct., at 1500.

*Lewis*, 518 U.S. at 351-52.

Thus, following *Lewis*, courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual,

7

concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. *See*, *e.g.*, *Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997); *Demeter v Buskirk*, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); *Castro v. Chesney*, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). Second, consistent with the Supreme Court's express view that "'we encourage local experimentation' in various methods of assuring access to the courts," *Lewis*, 518 U.S. at 352, courts have long recognized that public officials have significant discretion in the field and can provide meaningful access to the courts through a wide variety of means. *See*, *e.g.*, *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988); *Hester v. Morgan*, No. 10-309, 2010 WL 3907770, *2 (D. Del. Sept. 29, 2010); *Tinsley v. Del Rosso*, No. 08-1251, 2008 WL 2236598 (D. N.J. May 30, 2008); *Tormasi v. Hayman*, No. 07-5683, 2008 WL 1995125 (D. N.J. May 6, 2008); *Annis v. Fayette County Jail*, No. 07-1628, 2008 WL 763735 (W.D. Pa. March 20, 2008); *Hunter v. Schouppe*, No. 06-1023, 2007 WL 120030 (W.D. Pa. Jan. 10, 2007).

Here, Plaintiff contends that because Defendants confiscated and destroyed his legal documents, he was unable to pursue various PCRA petitions in light of the newly discovered exculpatory evidence in the form of Desmond McDougald's declaration and accompanying forensic fingerprint report. Further, Plaintiff contends that he was unable to pursue a 42 U.S.C. § 1983 civil rights action against the former District Attorney of Philadelphia County who allegedly withheld exculpatory forensic fingerprint evidence.

    a. <u>PCRA Petitions</u>

Plaintiff invokes 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(i)&(ii) in support of his argument that Defendants violated his First Amendment right of access to the courts. 42 Pa. Cons. Stat. Ann. § 9545 provides in relevant part as follows:

    **§ 9545. Jurisdiction and proceedings**

> . . .
>
> **(b) Time for filing petition.—**
>
> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence;
>
> . . .
>
> (2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa. Cons. Stat. Ann. § 9545 (b)(1)(i)(ii) & (2) (2007).

Here, even though Plaintiff points to the confiscation and destruction of his legal materials as a basis for filing his PCRA petitions beyond the 1-year statute of limitations, Plaintiff ignores the 60-day requirement in paragraph 2. That is, upon receiving the McDougald declaration and forensic fingerprint report in the mail, Plaintiff was required to file his various PCRA petitions within 60 days. Once his petitions were filed, Plaintiff would have had the opportunity through discovery to obtain all documents, including those he allegedly lost when his papers were confiscated and destroyed. *See* Pa. R. Crim. P. 902(A)(16). Consequently, Plaintiff was not prevented by Defendants from pursuing a "nonfrivolous" and "arguable" claim. *See Lewis*, 518 U.S. at 351; *Christopher v. Harbry*, 536 U.S. 403, 415 (2002). Instead, Plaintiff chose not to pursue the PCRA petitions by failing to file them within 60 days of allegedly acquiring the newly discovered evidence. Hence, Defendants' actions did not preclude Plaintiff

9

from pursuing his claims under the PCRA. Therefore, it is recommended that Defendants' Motion for Summary Judgment on this issue be granted.

   b. Habeas Corpus

Plaintiff also contends that Defendants violated his First Amendment right of access to the courts because their actions prevented him from pursuing a petition for habeas corpus pursuant to 28 U.S.C. § 2244(d)(1) which provides in relevant part as follows:

> **(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> . . .
>
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> . . .
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(B) & (D).

Nevertheless, a federal court may be precluded from reviewing claims under the "procedural default doctrine." *Gray v. Netherland*, 518 U.S. 152 (1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996), *abrogated on other grounds by, Beard v. Kindler*, 130 S. Ct. 612 (2009); *Sistrunk v. Vaughn*, 96 F.3d 666, 678 (3d Cir. 1996). The procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of

federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. *Coleman*, 501 U.S. at 750.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. *Id.*; *Sistrunk*, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. *Glass v. Vaughn*, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); *Carter*, 62 F.3d at 595. However, the procedural default doctrine only applies when a state procedural rule is consistently or regularly applied. *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) (quoting *Johnson v. Mississippi*, 486 U.S. 578, 588-89 (1988)).

Here, Plaintiff may not avail himself of the statutory exceptions to the 1-year limitations period for habeas relief pursuant to 28 U.S.C. § 2244(d)(1)(B) & (D), because he is procedurally defaulted. That is, because Plaintiff failed to file his PCRA petitions within 60 days of receiving the McDougald declaration and forensic fingerprint report, Plaintiff may not pursue habeas relief. As discussed *supra* at 9, Defendants did not prevent Plaintiff from timely filing his PCRA claims. In the absence of filing, a habeas petition filed by Plaintiff will be procedurally defaulted. Therefore, it is recommended that Defendants' Motion for Summary Judgment on this aspect of Plaintiff's First Amendment access to the courts claim be granted.

    c. <u>Section 1983 civil action against former Philadelphia County prosecutor</u>

Plaintiff also contends that the Defendants' confiscation and destruction of his legal

papers prevented him from filing a § 1983 civil rights action against the former district attorney of Philadelphia County who allegedly withheld exculpatory forensic fingerprint evidence.

In *Heck v. Humphrey*, the United States Supreme Court held that where a successful prisoner § 1983 damages action would impugn the validity of his conviction or sentence, the § 1983 litigant must first show that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by issuance of a federal writ of habeas corpus. 512 U.S. 477, 486-87 (1994).

Here, a § 1983 civil rights action against the former district attorney of Philadelphia County for withholding exculpatory evidence would certainly undermine Plaintiff's conviction for first degree homicide. As discussed *supra* at 9-11, Plaintiff cannot show that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by issuance of a federal writ of habeas corpus. Without meeting the requirements of *Heck*, Plaintiff is barred from filing his intended § 1983 action. Hence, Plaintiff cannot demonstrate that Defendants' confiscation and destruction of his legal papers prevented him from pursuing a § 1983 civil rights action against the former district attorney of Philadelphia County. Therefore, it is recommended that Defendants' Motion for Summary Judgment on this aspect of Plaintiff's First Amendment access to the courts claim be granted.

2. Fourteenth Amendment

To the extent that Plaintiff claims a procedural due process violation for the confiscation and destruction of his documents, this claim also fails as a matter of law because the State provides an adequate postdeprivation remedy. *Zinermon v. Burch*, 494 U.S. 113, 115 (1990)

(citing *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517 (1984)). That is, "where the State cannot predict and guard in advance against a deprivation, a postdeprivation tort remedy is all the process the State can be expected to provide, and is constitutionally sufficient." *Zinermon*, 494 U.S. at 115. Here, Plaintiff may file a state court action for conversion for any unlawful taking of his documents. In addition, the United States Court of Appeals has found that adequate post-deprivation remedies also include the use of the prison's grievance process. *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010); *Tillman v. Lebanon Cnty. Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000). Either of these remedies will satisfy due process, even if an inmate is dissatisfied with the result. *Mearin v. Folino*, Civil Action No. 11-571, 2013 WL 5332120, at *7 (W.D. Pa. Sept. 23, 2013) (citing *Iseley v. Horn*, No. Civ. A. 95-5389, 1996 WL 510090, at *6 (E.D. Pa. Sept. 3, 1996); *Pettaway v. SCI Albion*, C.A. No. 11-158 Erie, 2012 WL 366782, at *3-4 (W.D. Pa. Feb. 2, 2012)).[2]

Therefore, it is recommended that Defendants' Motion for Summary Judgment on Plaintiff's Fourteenth Amendment procedural due process claim be granted.

3. Defendants are protected by qualified immunity

Because the Court has determined that Defendants have not violated Plaintiff's constitutional rights as a matter of law, the Court need not undertake a discussion of qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001) (in the absence of an underlying

---

[2] Plaintiff also states that Defendants violated his right to equal protection. Plaintiff offers no argument in support of this statement, nor do Defendants argue in support of summary judgment on this issue. After a careful review of the record, the Court finds that the facts do not support a claim for a Fourteenth Amendment equal protection violation as a matter of law. *See Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 238 (M.D. Pa. 1995) (quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.").

constitutional violation, the qualified immunity analysis need not proceed any further as qualified immunity will apply).[3]

### III. CONCLUSION

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants Sean Domanick, Kenneth Hollibaugh, and Robert Rosenbaum at ECF No. 85 be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: February 13, 2015                    BY THE COURT:

                                            /s/ Lisa Pupo Lenihan
                                            LISA PUPO LENIHAN
                                            United States Magistrate Judge

---

[3] Although Plaintiff lists the Fifth, Sixth and Eighth Amendments in his submissions, he does not indicate how Defendants have violated these amendments. And as with Plaintiff's equal protection claim, Defendants offer no argument in support of summary judgment as to these amendments. Again, a review of the record does not suggest that these amendments are in play.

cc: Troy Coulston
BK-3534
SCI Houtzdale
P.O. Box 1000
Houtzdale, PA  16698

All Counsel of Record
Via Electronic Mail